# UNITED STATES DISTRICT COURT
for the
### Western District of Kentucky
### Louisville Division

| | | |
|---|---|---|
| Christopher E. Druckenmiller<br> *Plaintiff* | ) ) ) | |
| v. | ) ) | Case No. 3:17-CV-6-DJH |
| RentDebt Automated Collections, LLC<br> *Defendant*<br>Serve:<br>  Incorp Services, Inc.<br>  828 Lane Allen Road<br>  Suite 219<br>  Lexington, KY 40504 | ) ) ) ) ) ) ) ) ) | |
| First Associates Loan Servicing, LLC<br> *Defendant*<br>Serve:<br>  The Corporation Trust Co.<br>  Corporation Trust Center<br>  1209 Orange Street<br>  Wilmington, DE 19801 | ) ) ) ) ) ) ) ) | |
| Trans Union, LLC<br> *Defendant*<br>Serve:<br>  The Prentice Hall Corp. System<br>  421 West Main Street<br>  Frankfort, KY 40601 | ) ) ) ) ) ) ) | |
| Equifax Information Services, LLC<br> *Defendant*<br>Serve:<br>  Corporation Service Company<br>  421 West Main Street<br>  Frankfort, KY 40601 | ) ) ) ) ) ) ) ) | |

# COMPLAINT and DEMAND FOR JURY TRIAL

## INTRODUCTION

1.      This is an action brought by Plaintiff Christopher Druckenmiller for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 - 1692o ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

## JURISDICTION

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, the FDCPA, 15 U.S.C. §1692k(d), the FCRA § 1681p, and 28 U.S.C. § 2201.

## PARTIES

3.      Plaintiff Christopher E. Druckenmiller is a natural person who resides in Jefferson County, Ky. Mr. Druckenmiller is a "consumer" within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a (3), and the FCRA, as defined at 15 U.S.C. § 1681a(c).

4.      Defendant RentDebt Automated Collections, LLC ("RentDebt") is a third-party debt collector, whose principal office is located at 2802 Opryland Drive, Nashville, TN 37214.

5.      RentDebt regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6). RentDebt is also a furnisher of credit information within the meaning of the FCRA.

6.      Defendant First Associates Loan Servicing, LLC ("First Associates") is a third-party debt collector, whose principal office is located at 2802 Opryland Drive, Nashville, TN 37214.

7.      First Associates regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6). First Associates is also a furnisher of credit information within the meaning of the FCRA.

8.      Defendant Trans Union, LLC is a foreign limited liability company, with its principal place of business located at 555 West Adams, Chicago, IL 60661. Trans Union has registered to do business with Kentucky Secretary of State. Trans Union is a "consumer reporting agency" within the meaning of the FCRA.

9.      Defendant Equifax Information Services, LLC is a foreign limited liability company, with its principal place of business located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax has registered to do business with Kentucky Secretary of State. Equifax is a "consumer reporting agency" within the meaning of the FCRA.

## STATEMENT OF FACTS

**I.     Facts Relating to RentDebt**

8.     In April 2014, Mr. Druckenmiller entered into an apartment lease with McArthur Park Apartments, which is located at 7025 Bronner Circle, Louisville, Kentucky.

9.     A true and accurate copy of the McArthur Park lease agreement is attached as Exhibit "A."

10.     Mr. Druckenmiller used the McArthur Park apartment for personal and household purposes, which makes any debt created by the McArthur Park lease agreement a "debt" within the meaning of the FDCPA.

11.     Mr. Druckenmiller and McArthur Park Apartments entered into the lease agreement in Jefferson County, Kentucky.

12.     The McArthur Park lease agreement includes a provision for the lessor's recovery of attorney's fees and collection costs:

> 28.     ATTORNEY'S FEES AND COST OF COLLECTION: Resident agrees to pay on demand all expenses for collection, including reasonable attorney's fees and court costs Landlord incurs in the collection of rent or enforcement on any of the provisions of this Lease, to the extent permitted by applicable law.

13.     The provision for the recovery of attorney's fees and collection costs plainly violates Kentucky's Uniform Residential Landlord Tenant Act ("URLTA"), KRS 383.505 *et seq.*

14.     Jefferson County, Kentucky, within which Mr. Druckenmiller and McArthur Park Apartments entered into the lease agreement, had adopted Kentucky's URLTA per the provisions of KRS 383.500 prior to the date of the lease agreement. 1994 Jeff. Code § 151.01 *et seq.*

15.     KRS 383.570 and 1994 Jeff. Code § 151.24 provide in pertinent part:

> (1)  A rental agreement may not provide that the tenant….
>
>     (c)  Agrees to pay the landlord's attorney's fees….
>
> (2)  A provision prohibited by subsection (1) included in rental agreement is unenforceable.

16.     In May of 2014, Mr. Druckenmiller suffered a work-related injury.

17.     Mr. Druckenmiller's employer temporarily placed Mr. Druckenmiller on light administrative duty.

18.     As a result of this change in job duties, Mr. Druckenmiller lost commission income

from his job in sales.

19.    Consequently, Mr. Druckenmiller fell behind on some of his financial obligations, including rent payments to McArthur Park.

20.    When he failed to pay his rent on the date due, McArthur Park imposed onerous late fees and other fees on Mr. Druckenmiller.

21.    Mr. Druckenmiller got caught in cycle of debt and fees from which he had trouble escaping.

22.    On October 20, 2014, McArthur Park served an eviction notice on Mr. Druckenmiller.

23.    A true and accurate copy of the Eviction Notice is attached as Exhibit "B."

24.    The Eviction Notice provides in pertinent part:

> **Please note that your account has been turned over for eviction and has been charged $250.00 legal fees in addition to the concession chargeback and $75.00 late fee added on the 6th and the daily late fee of $5.00 that continues to accrue to your balance.**
>
> Your account must be paid in full no later than October 24, 2014 to stop the eviction process. If we do not receive the payment in full by said date, you will need to turn in keys.

25.    But for the illegal and unenforceable $250.00 in "legal fees," Mr. Druckenmiller could have brought his account current.

26.    On October 20, 2014, McArthur Park filed a petition for a writ of forcible detainer against Mr. Druckenmiller in the case of *McArthur Park Apartments v. Druckenmiller*, Case No. 14-C-914301 (Jeff. Dist. Ct.)

27.    McArthur Park Apartments is not registered as a legal entity with the Kentucky Secretary of State.

28.    McArthur Park Apartments had no legal right to enter into a lease agreement with Mr. Druckenmiller or to bring suit against him.

29.    At the time of the eviction, Mr. Druckenmiller was in a Chapter 13 Bankruptcy Case in the Western District of Kentucky, Case No. 14-30134.

30. Mr. Druckenmiller filed an Adversarial Proceeding against McArthur Park Apartments for violations of the Uniform Residential Landlord Tenant Act and the Kentucky Consumer Protection Act, Case No. 14-03053.

31. Mr. Druckenmiller, through counsel, reached an agreement whereby Mr. Druckenmiller would dismiss the Adversarial Proceeding in exchange for being given until the end of November to move.

32. The Jefferson District Court granted McArthur Park a judgment for a writ of forcible entry and detainer on December 1, 2014.

33. Mr. Druckenmiller was able to find another place to live and moved on or about December 1, 2014.

34. In November of 2016, Mr. Druckenmiller's new landlord told him that he would have to find a new place to live because his building was going to be razed.

35. In connection with preparing to find a new place to live, Mr. Druckenmiller reviewed of his consumer credit reports issued by Trans Union and Equifax through www.creditkarma.com, which is a credit-orientated website run by Trans Union.

36. Mr. Druckenmiller discovered several items on his credit reports that were not correct, including negative credit information furnished by RentDebt in connection with the McArthur Park lease agreement.

37. RentDebt furnished negative credit information concerning Mr. Druckenmiller and the McArthur Park lease agreement for purposes of collecting a debt from Mr. Druckenmiller. *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms.'").

38. Mr. Druckenmiller contacted RentDebt to determine its basis for furnishing negative credit information concerning him and the McArthur Park lease agreement.

39. In response, RentDebt sent Mr. Druckenmiller several documents, including a "Final Account Statement-Revised" from McArthur Park Apartments.

40. A true and accurate copy of the Final Account Statement-Revised is attached as Exhibit "C."

41. The Final Account Statement-Revised includes a line item for "Eviction and Legal Fees" in the amount of $250.00.

42. Mr. Druckenmiller, by counsel, disputed the negative credit information furnished by RentDebt concerning the McArthur Park lease agreement.

43. On or about December 7, 2016, Mr. Druckenmiller's counsel sent written dispute letters to Experian, Equifax, and Trans Union.

44. The December 7th dispute letters all provide in pertinent part:

> You may…be reporting negative credit information concerning Mr. Druckenmiller furnished by RentDebt Automated Collection, LLC, 2285 Murfreesboro Road, Suite 200, Nashville, TN 37217. RentDebt is furnishing negative credit information concerning two alleged debts to McArthur Park that falsely overstates the amount due on the debts. RentDebt has included legal fees and other fees in costs in the two McArthur debts that are illegal and cannot be collected.
>
> Please investigate and correct Mr. Druckenmiller's consumer credit report accordingly. As part of your investigation(s), forward a copy of this letter and all its enclosures to the sources of the information listed above. After your investigation, please send Mr. Druckenmiller a free and corrected credit report so that he can review it. Please contact me by email or phone if you need more information.

45. Upon information and belief, Experian, Equifax, and Trans Union all sent RentDebt notice of Mr. Druckenmiller's dispute, which thereby triggered RentDebt's duty under 15 U.S.C. § 1681s-2(b) to reinvestigate the McArthur Park lease agreement.

46. Upon information and belief, RentDebt failed to conduct a reasonable investigation into Mr. Druckenmiller's dispute concerning the negative credit information concerning Mr. Druckenmiller and the alleged RentDebt debt that RentDebt is furnishing to one or more consumer reporting agencies.

47. RentDebt falsely verified the accuracy of the disputed negative credit information to one or more consumer reporting agencies.

48. As a result of RentDebt's failure to conduct a reasonable investigation of Mr. Druckenmiller's dispute, Mr. Druckenmiller suffered actual damages in the form of a lowered credit score and denial of credit.

49. RentDebt violated the FDCPA by attempting to collect a debt from Mr. Druckenmiller that includes added legal fees that illegal and unenforceable.

50. RentDebt violated the FCRA by failing to conduct a reasonable investigation of Mr. Druckenmiller's dispute after receiving notice of the dispute from one or more consumer reporting agencies.

## II.     Facts Relating to First Associates

51.     Mr. Druckenmiller filed for Chapter 13 Bankruptcy on January 16, 2014.

52.     At the time he filed his Chapter 13 Petition, Mr. Druckenmiller was in default on a secured loan to Condor Capital Corp. ("Condor").

53.     Mr. Druckenmiller incurred the Condor secured loan for personal, family, and household purposes, which makes the Condor debt a "debt" within the meaning of the FDCPA.

54.     Indeed, Mr. Druckenmiller filed for Chapter 13 Bankruptcy in order to stop Condor from repossessing his vehicle, which he needed to use for purposes of personal transportation, including getting his daughter to and from school and other extracurricular activities.

55.     Mr. Druckenmiller listed Condor a secured creditor in his Chapter 13 Petition.

56.     Mr. Druckenmiller's Chapter 13 Plan valued Condor's claim at $7,277 at 0.00% interest to be paid off in monthly payments of $280.00 for 26 months.

57.     Condor did not object to Mr. Druckenmiller's Chapter 13 Plan or treatment of Condor's claim.

58.     The Bankruptcy Court confirmed Mr. Druckenmiller's Chapter 13 Plan on February 13, 2014.

59.     In December 2014, Condor entered into a Consent Judgment with the New York Department of Financial Services. http://www.dfs.ny.gov/about/press/pr1412191.htm (NYDFS press release visited December 7, 2016). Under the terms of the settlement, Condor admitted to misdeeds, fraud, and statutory violations. It also agreed to a total liquidation of the company.

60.     Mr. Druckenmiller did not miss any Chapter 13 Plan payment.

61.     On October 5, 2015, First Associates filed a transfer of claim in Mr. Druckenmiller's bankruptcy case transferring Condor's claim to First Associates.

62.     Mr. Druckenmiller's Condor account was still in a state of default when the claim was transferred to First Associates.

63.     Condor/First Associate's claim was paid in full by March 2016.

64.     To date, First Associates has not released its lien on Mr. Druckenmiller's vehicle. Nor has it sent Mr. Druckenmiller clear title for his vehicle.

65.     As a result of First Associates' failure to release its lien and its failure to send Mr. Druckenmiller clear title as required by law, Mr. Druckenmiller has been unable to sell or transfer his vehicle. This has caused Mr. Druckenmiller financial hardship and a great deal of inconvenience and frustration.

66. When Mr. Druckenmiller reviewed his consumer credit reports, he discovered negative credit information furnished by First Associates in connection with the Condor debt.

67. First Associates furnished negative credit information about Mr. Druckenmiller and the Condor debt for purposes of collecting a debt from him. *Sullivan, supra.*

68. The credit information furnished by First Associates was substantively wrong.

69. First Associates was reporting that a positive balance was still due on the Condor debt and that, after the date he filed for Chapter 13 Bankruptcy, he was more than 180 days past due in making payments on the debt.

70. On or about December 7, 2016, Mr. Druckenmiller's counsel sent written dispute letters to Equifax and Trans Union disputing the false credit information reported by First Associates.

71. Upon information and belief, Equifax and Trans Union each sent First Associates notice of Mr. Druckenmiller's dispute, which thereby triggered First Associate's duty under 15 U.S.C. § 1681s-2(b) to reinvestigate the Condor debt.

72. Upon information and belief, First Associates failed to conduct a reasonable investigation into Mr. Druckenmiller's dispute concerning the negative credit information concerning Mr. Druckenmiller and the alleged First Associates debt that First Associates is furnishing to one or more consumer reporting agencies.

73. First Associates falsely verified the accuracy of the disputed negative credit information to one or more consumer reporting agencies.

74. While First Associates corrected most of the false information it was furnishing about Mr. Druckenmiller and the Condor debt, First Associates reported an inaccurate date of first delinquency for the debt.

75. In particular, First Associates reported a date of first of delinquency of September 2015. This date most likely reflects when First Associates acquired the Condor debt.

76. The actual date of first delinquency occurred sometime in late 2013 prior to the date on which Mr. Druckenmiller filed for Chapter 13 Bankruptcy relief.

77. The date of first delinquency is important because this is the date that Consumer Reporting Agencies use under 15 U.S.C. §1681c(a) to determine when they must stop reporting the negative trade line.

78. As a result of First Associates's failure to conduct a reasonable investigation of Mr. Druckenmiller's dispute, Mr. Druckenmiller suffered actual damages in the form of a lowered credit score and denial of credit.

79. First Associates violated the FDCPA by **(i)** reporting false negative credit information about Mr. Druckenmiller and the Condor debt, including but not limited to reporting an erroneous amount owed, a false payment history, and the incorrect date of first delinquency; **(ii)** attempting to collect on debt that Mr. Druckenmiller no longer owed; and **(iii)** refusing to release the lien on his vehicle and send him clear title to his vehicle.

80. First Associates violated the FCRA by failing to conduct a reasonable investigation of Mr. Druckenmiller's dispute after receiving notice of the dispute from one or more consumer reporting agencies.

### III. Facts Relating to Equifax and Trans Union

81. Mr. Druckenmiller failed to pay all of his 2003 and 2004 federal income taxes. As a result, the Internal Revenue Service ("IRS") filed a tax lien in the Jefferson County Clerk's office on June 10, 2010. LB 01164, PG 0118.

82. Mr. Druckenmiller later paid off this tax debt.

83. The IRS filed a tax lien release on December 5, 2012. LB 01361, PG 0036.

84. Both the IRS tax lien and tax lien release are public records easily available to all. Further, the records are also available online.

85. Equifax and Trans Union each failed to update Mr. Druckenmiller's consumer credit report to reflect that the IRS tax lien had been paid and full and that the IRS tax lien had been released.

86. Mr. Druckenmiller was denied credit and financing and/or had to pay more for credit because of inaccurate credit information published by Equifax and Trans Union in connection with the IRS tax lien. In particular, Equifax and Trans Union each falsely and incorrectly published to one or more of its subscribers and users of its consumer reports that the IRS tax lien remained unpaid and unreleased.

87. Equifax and Trans Union's reporting of the IRS tax lien as unpaid and unreleased was inaccurate in violation of the FCRA, 15 U.S.C. § 1681e(b). Equifax and Trans Union each failed to follow reasonable procedures to assure maximum possibility accuracy in the preparation of Mr. Druckenmiller's credit reports and credit files each publishes and maintains concerning Mr. Druckenmiller. If Equifax and Trans Union had reasonable procedures in place, Equifax and Trans Union would have each discovered that IRS had filed a release of its tax lien *before* publishing Mr. Druckenmiller's credit report to their subscribers and users of their consumer reports in connection with Mr. Druckenmiller's loan and credit applications.

88. Equifax and Trans Union each failed to maintain reasonable procedures designed

to avoid violations of the FCRA in connection with publishing credit information concerning Mr. Druckenmiller and the released IRS tax lien.

89. As result of Equifax's and Trans Union's reporting of false negative credit information concerning the IRS tax lien, *i.e.* failing to report that the IRS had released the lien, Mr. Druckenmiller was denied application for credit and had to pay more for credit.

## CLAIMS FOR RELIEF

I.     Claims against RentDebt Automated Collections, LLC

     A.     **Declaratory Relief**

90. Declare that RentDebt Automated Collections, LLC ("RentDebt") violated Kentucky law by attempting to collect legal fees from Mr. Druckenmiller that are illegal and unenforceable under KRS 383.570 and 1994 Jeff. Code § 151.24.

     B.     **Violation of the FDCPA**

91. The foregoing acts and omissions of RentDebt violate the FDCPA, including 15 U.S.C. § 1692e and 15 U.S.C. § 1692f and one or more subsections of each statute.

     C.     **Violation of the FCRA**

92. The foregoing acts and omissions of RentDebt violate the FCRA.

         i.     **Violations of 15 U.S.C. § 1681n**

93. After being informed by Equifax, Experian, and/or Trans Union that Mr. Druckenmiller disputed the accuracy of the information it was providing concerning Mr. Druckenmiller and the McArthur Park lease agreement, RentDebt willfully failed to conduct a proper investigation of Mr. Druckenmiller's disputes, filed with Equifax, Experian, and/or Trans Union, that RentDebt was furnishing false negative credit information about Mr. Druckenmiller and the McArthur Park lease agreement, which included illegal and unenforceable "legal fees."

94. RentDebt willfully failed to review all relevant information purportedly provided by Equifax, Experian, and/or Trans Union to RentDebt in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

95. RentDebt willfully failed to direct Equifax, Experian, and/or Trans Union to delete inaccurate information about Mr. Druckenmiller pertaining to the McArthur Park lease agreement as required by 15 U.S.C. § 1681s-2(b)(C).

96. Mr. Druckenmiller has a private right of action to assert claims against RentDebt arising under 15 U.S.C. § 1681s-2(b).

97. RentDebt is liable to Mr. Druckenmiller for the actual damages he has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages, whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

### ii. Violation of 15 U.S.C. § 1681o

98. After being informed by Equifax, Experian, and/or Trans Union that Mr. Druckenmiller disputed the accuracy of the information it was providing concerning Mr. Druckenmiller and the McArthur Park lease agreement, RentDebt and/or negligently failed to conduct a proper investigation of Mr. Druckenmiller's disputes, filed with Equifax, Experian, and/or Trans Union, that RentDebt was furnishing false negative credit information about Mr. Druckenmiller and the McArthur Park lease agreement, which included illegal and unenforceable "legal fees."

99. RentDebt negligently failed to review all relevant information purportedly provided by Equifax, Experian, and/or Trans Union to RentDebt in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

100. RentDebt negligently failed to direct Equifax, Experian, and/or Trans Union to delete inaccurate information about Mr. Druckenmiller pertaining to the McArthur Park lease agreement as required by 15 U.S.C. § 1681s-2(b)(C).

101. Mr. Druckenmiller has a private right of action to assert claims against RentDebt arising under 15 U.S.C. § 1681s-2(b).

102. RentDebt is liable to Mr. Druckenmiller for the actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681o.

## II. Claims against First Associates Loan Servicing, LLC

### A. Violation of the FDCPA

103. The foregoing acts and omissions of First Associates Loan Servicing, LLC ("First Associates") violate the FDCPA, including 15 U.S.C. § 1692e and 15 U.S.C. § 1692f and one or more subsections of each statute.

### B. Violation of the FCRA

104. The foregoing acts and omissions of First Associates violate the FCRA.

### i.  Violations of 15 U.S.C. § 1681n

105.  After being informed by Equifax and Trans Union that Mr. Druckenmiller disputed the accuracy of the information it was providing concerning Mr. Druckenmiller and the Condor debt, First Associates willfully failed to conduct a proper investigation of Mr. Druckenmiller's disputes, filed with Equfiax and Trans Union, that First Associates was furnishing false negative credit information about Mr. Druckenmiller and the Condor debt.

106.  First Associates willfully failed to review all relevant information purportedly provided by Equfiax and Trans Union to First Associates in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

107.  First Associates willfully failed to direct Equfiax and Trans Union to delete inaccurate information about Mr. Druckenmiller pertaining to the Condor debt as required by 15 U.S.C. § 1681s-2(b)(C).

108.  Mr. Druckenmiller has a private right of action to assert claims against First Associates arising under 15 U.S.C. § 1681s-2(b).

109.  First Associates is liable to Mr. Druckenmiller for the actual damages he has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages, whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

### ii.  Violation of 15 U.S.C. § 1681o

110.  After being informed by Equfiax and Trans Union that Mr. Druckenmiller disputed the accuracy of the information it was providing concerning Mr. Druckenmiller and the Condor debt, First Associates and/or negligently failed to conduct a proper investigation of Mr. Druckenmiller's disputes, filed with Equfiax and Trans Union, that First Associates was furnishing false negative credit information about Mr. Druckenmiller and the Condor debt.

111.  First Associates negligently failed to review all relevant information purportedly provided by Equfiax and Trans Union to First Associates in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

112.  First Associates negligently failed to direct Equfiax and Trans Union to delete inaccurate information about Mr. Druckenmiller pertaining to the Condor debt as required by 15 U.S.C. § 1681s-2(b)(C).

113.  Mr. Druckenmiller has a private right of action to assert claims against First Associates arising under 15 U.S.C. § 1681s-2(b).

114.  First Associates is liable to Mr. Druckenmiller for the actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of

fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681o.

### III.   Claims against Trans Union, LLC

115.   The foregoing acts and omissions by Trans Union, LLC violate the FCRA.

116.   Trans Union, LLC violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Mr. Druckenmiller and the IRS tax lien.

117.   Trans Union's conduct, actions and inactions were willful, rendering Trans Union liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs. Trans Union was on clear notice that the failure to update public records with respect to judgments was improper due to similar lawsuits raising the same or similar claims as this action having been filed against Trans Union in this and other jurisdictions for the same or similar claims of failing to update public records with respect to judgments.

118.   In the alternative, Trans Union's conduct, actions and inactions were grossly negligent or negligent, rendering Trans Union liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

### IV.   Claims against Equifax Information Services, LLC

119.   The foregoing acts and omissions by Equifax Information Services, LLC violate the FCRA.

120.   Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning Mr. Druckenmiller and the IRS tax lien.

121.   Equifax's conduct, actions and inactions were willful, rendering Equifax liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs. Equifax was on clear notice that the failure to update public records with respect to judgments was improper due to similar lawsuits raising the same issue having been brought against Equifax and Equifax held liable in this and other jurisdictions.

122.   In the alternative, Equifax's conduct, actions and inactions were grossly negligent or negligent under 15 U.S.C. § 1681o, making Equifax liable for Plaintiff's actual damages,

attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Christopher Druckenmiller request that the Court grant him the following relief:

1. Award Plaintiff maximum statutory damages against each Defendant pursuant to the FDCPA and/or FCRA;

2. Award Plaintiff actual damages against each Defendant pursuant to the FDCPA and/or FCRA;

3. Award Plaintiff punitive damages against each Defendant pursuant to the FCRA;

4. Declare that RentDebt violated Kentucky law by attempting to collect legal fees from Mr. Druckenmiller that are illegal and unenforceable under Kentucky law in a rental agreement;

5. Award Plaintiff reasonable attorney's fees and costs;

6. A trial by jury; and

7. Such other relief as may be just and proper.

Respectfully submitted,

/s/ James H. Lawson
**James H. Lawson**
*Lawson at Law, PLLC*
115 S. Sherrin Avenue
Suite 4
Louisville, KY 40207
Tel:   (502) 473-6525
Fax:  (502) 473-6561
james@kyconsumerlaw.com